UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

DAMIAN ZABRODIN and IMRAN GASHIMLI,
on behalf of themselves and others
similarly situated in the proposed
FLSA Collective Action,

                    Plaintiffs,          **<u>MEMORANDUM & ORDER</u>**

   - against –              No. 1:22-cv-7064(KAM)(MMH)

SILK 222, INC. and KHURSHED
KURBANOV,

                    Defendants.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     Plaintiffs Damian Zabrodin and Imran Gashimli brought this action against Defendants Silk 222, Inc. ("Silk 222") and Khurshed Kurbanov, raising various claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 1–1200, (Compl., ECF No. 1). Plaintiffs now move the Court to enter a default judgment against Defendants for failing to timely answer or otherwise respond to the Complaint. (Notice of Mot. for Default J., ECF No. 19.) For the reasons below, the Court grants Plaintiffs' motion in part and denies it in part.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint, Notice of Motion for Default Judgment, supporting memorandum, and supporting declaration and affidavits. (*See* Compl.; Mot. for Default J.; Mem. in Supp. of Mot. for Default J. ("Mem."), ECF No. 20; Decl. of Jason Mizrahi ("Mizrahi Decl."), July 10, 2023, ECF No. 21; Aff. of Damian Zabrodin ("Zabrodin Aff."), ECF No. 22; Aff. of Imran Gashimli ("Gashimli Aff."), ECF No. 23; Decl. of Jason Mizrahi ("Am. Mizrahi Decl."), Oct. 30, 2023, ECF No. 24; Decl. of Jason Mizrahi ("2d Am. Mizrahi Decl."), Nov. 10, 2023, ECF No 25.)

## I.  Factual Background

Silk 222 is a New York corporation with its principal place of business in Brooklyn, New York. (Compl. ¶ 12.)  It has employees engaged in commerce and an annual gross sales volume of at least $500,000. (*Id.* ¶ 13.)  Kurbanov has "operational control over," has an ownership interest in, and "controls significant functions of" Silk 222. (*Id.* ¶ 24.)  Defendants "own, operate[,] and/or control" SILK Restaurant and Lounge ("Silk Restaurant") in Brooklyn, New York, where Zabrodin worked as a server from June 2022 through October 2022 and Gashimli worked as a bartender from July 2022 through September 2022. (*Id.* ¶¶ 6-7, 9-10, 23; *see* 2d Am. Mizrahi Decl. Ex. A.)

2

Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of Plaintiffs' employment, and determine the rate and method of Plaintiffs' compensation. (Compl. ¶¶ 17, 21, 31.)  They had "substantial control over" Plaintiffs' working conditions and the policies and practices regarding Plaintiffs' employment and compensation.  (*Id.* ¶ 26.) Kurbanov set employees' schedules and maintained employee records.  (*Id.* ¶ 21.)  Plaintiffs were not required to keep track of their time and are unaware of Defendants having used sign-in sheets, punch cards, or any other time tracking advice that would have reflected the actual number of hours they worked.  (Zabrodin Aff. ¶ 14; Gashimli Aff. ¶ 12.)

### A.  Zabrodin

From July 1, 2022, through September 30, 2022, Zabrodin worked at Silk Restaurant twelve hours per day Friday through Monday for a total of 48 hours per week.  (Compl. ¶ 33; *see* 2d Am. Mizrahi Decl. Ex. A.)[1]  From October 1, 2022, through October 31, 2022, he worked at Silk Restaurant twelve hours per day Saturday and Sunday for a total of 24 hours per week. (Compl. ¶ 34; *see* 2d Am. Mizrahi Decl. Ex. A.)  From June 1,

---

[1] The Complaint does not specify which days of the week Plaintiffs worked. Because the precise days of the week on which each plaintiff worked are material to Plaintiffs' damages calculation, the Court relies on Plaintiffs' damages spreadsheet, which identifies the number of hours each plaintiff worked for each day during the relevant period.  (*See* 2d Am. Mizrahi Decl. Ex. A.)

2022, through July 15, 2022, Defendants paid Zabrodin $15 per hour for all hours worked. (Compl. ¶ 35; *see* 2d Am. Mizrahi Decl. Ex. A.)  From July 16, 2022, through October 31, 2022, Defendants paid him $15 per hour for all hours worked on weekdays and a flat daily salary of $50 per day on weekends. (Compl. ¶¶ 36–37; *see* 2d Am. Mizrahi Decl. Ex. A.)  Defendants paid him no wages for his last three weeks of employment. (Compl. ¶ 38; *see* 2d Am. Mizrahi Decl. Ex. A.)[2]

**B.  Gashimli**

From July 1, 2022, through September 30, 2022, Gashimli worked Friday through Tuesday, ten hours per day on weekdays and twelve hours per day on weekends, for a total of 54 hours per week.  (Compl. ¶ 41; *see* 2d Am. Mizrahi Decl. Ex. A.)  From July 1, 2022, through July 15, 2022, Defendants paid him $15 per hour for all hours worked.  (Compl. ¶ 42; *see* 2d Am. Mizrahi Decl. Ex. A.)  From July 16, 2022, through September 30, 2022, Defendants paid Gashimli $15 per hour for all hours worked on weekdays and a flat daily salary of $50 per day on weekends. (Gashimli Aff. ¶¶ 9–10;[3] *see* 2d Am. Mizrahi Decl. Ex. A.)

Defendants required Plaintiffs to distribute their tips to non-tipped managers at Silk Restaurant, including to Kurbanov.

---

[2] Plaintiffs' damages spreadsheet suggests he *was* paid during these weeks, (*see* 2d Am. Mizrahi Decl. Ex. A), but the Court credits paragraph 38 of the Complaint for reasons explained below, *see infra* p. 25.
[3] The Court relies on Gashimli's declaration for these facts because paragraphs 43 and 44 of the Complaint erroneously refer to Zabrodin.

(Compl. ¶ 48.)  They did not make available to Plaintiffs a daily log of tips collected by each employee, a list of occupations deemed eligible for tip sharing, the shares of tips that each occupation was scheduled to receive, or the amount each employee received from the tip share by date.  (*Id.* ¶ 52.) Plaintiffs estimate that Defendants unlawfully deducted an average of $100 in tips from each of them per day.  (Mem. 14; *see* 2d Am. Mizrahi Decl. Ex. A.)

Defendants did not "post in a conspicuous place" Department of Labor notices about wage and hour laws, tip appropriations, or "illegal deduction provisions."  (Compl. ¶ 53.)  Defendants also did not provide Plaintiffs wage statements in accordance with Section 195(3) of the NYLL.  (*Id.* ¶ 55.)  Finally, Defendants did not give Plaintiffs notice of their rates of pay, Silk Restaurant's regular pay day, or "such other information" required by Section 195(1) of the NYLL.  (*Id.* ¶ 56.)

## II.  Procedural Background

Plaintiffs commenced this action against Defendants on November 20, 2022.  (*See* Compl.)  The first four counts of Plaintiffs' Complaint allege violations of the FLSA's and the NYLL's minimum wage and overtime regulations.  (*See id.* ¶¶ 62-81.)  The next four counts allege violations of the NYLL's spread-of-hours pay, wage notice, wage statement, and tip regulations.  (*See id.* ¶¶ 82-98.)  The last count alleges that

Defendants violated the FLSA by deducting Plaintiffs' wages for breaks that Plaintiffs never received.  (*See id.* ¶¶ 99-104.) Plaintiffs seek certification of this action as a FLSA collective action, declaratory relief, damages, pre-judgment and post-judgment interest, attorneys' fees, and costs.  (*See id.* pp. 15-17.)

On November 21, 2022, the Clerk of Court issued a Summons to each defendant at 222 Avenue U, Brooklyn, New York 11223. (ECF No. 6.)  On December 6, 2022, Plaintiffs filed an affidavit stating that the Summons and Complaint had been served on Silk 222 through the New York Secretary of State on November 28, 2022.  (ECF No. 9.)  On February 23, 2023, Magistrate Judge Henry entered an order noting that Plaintiffs had not yet served Kurbanov and ordering Plaintiffs to do so by March 9, 2023.  On March 9, 2023, Plaintiffs filed an affidavit representing that the Summons and Complaint had been served on Kurbanov through personal service on his colleague, Murad Khadirov, at 222 Avenue U, Brooklyn, New York 11223 on March 9, 2023.  (ECF No. 10.)

Also on March 9, 2023, Plaintiffs filed a request for a certificate of default against Silk 222 based on its failure to answer or otherwise respond to the Complaint by December 19, 2022.  (ECF No. 12.)  The Clerk of Court entered Silk 222's default on March 14, 2023.  (ECF No. 14.)  On March 31, 2023, Plaintiffs filed a request for a certificate of default against

Kurbanov based on his failure to answer or otherwise respond to the Complaint by March 30, 2023.  (ECF No. 15.)  The Clerk of Court entered Kurbanov's default on April 5, 2023.  (ECF No. 16.)

Magistrate Judge Henry entered an order on April 10, 2023, noting that the Clerk of Court had issued certificates of default against both defendants and ordering Plaintiffs to file any motion for a default judgment by June 9, 2023.  Plaintiffs on May 26, 2023, moved Magistrate Judge Henry for an extension of time through July 9, 2023, to file their motion, (ECF No. 18), which she granted on June 5, 2023.  Plaintiffs filed their motion and supporting materials on July 10, 2023, (*See* Mot. for Default J.; Mem.; Mizrahi Decl.; Zabrodin Aff.; Gashimli Aff.), one day late.[4]

The Court issued an order on October 23, 2023, noting that Plaintiffs mistakenly attached to their attorney declaration the certificates of default and complaint from another case and that Plaintiffs' affirmation of service lacked certain details required by Local Rule 55.2(c).  The Court ordered Plaintiffs to file corrected versions of these materials and to file proof

---

[4] The Court admonishes Plaintiffs for ignoring the deadline to file a motion that seeks to hold Defendants accountable for ignoring the deadline to respond to the Complaint.  Still, the Court exercises its discretion to excuse the late filing.  The delay was minimal and caused no prejudice because Defendants still have not appeared or otherwise participated in this case.

that Plaintiffs mailed their corrected motion papers to
Defendants, which Plaintiffs did on October 30, 2023.  (*See* Am.
Mizrahi Decl.)  The Court issued another order on November 6,
2023, noting that Plaintiffs' attorney declaration remained
deficient because it bore the wrong caption and attached billing
records and invoices from a different case.  The Court ordered
Plaintiffs to file another corrected attorney declaration and
mail their corrected motion papers to Defendants, which
Plaintiffs did on November 10, 2023.  (*See* 2d Am. Mizrahi Decl.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the two-step
process by which a plaintiff obtains a default judgment against
a defendant.  First, when the defendant fails to plead or
otherwise defend and that failure is shown by affidavit or
otherwise, the clerk of court enters the defendant's default.
Fed. R. Civ. P. 55(a).  Then, the plaintiff may move the court
to enter a default judgment against the defendant.
Fed. R. Civ. P. 55(b). Before entering a default judgment, the
court must ensure that (1) jurisdictional requirements are
satisfied, (2) the plaintiff took all required procedural steps
in moving for a default judgment, and (3) the plaintiff's
allegations establish the defendant's liability as a matter of
law, *Windward Bora LLC v. Ingber*, No. 2:21-cv-3308(KAM)(ARL),
2023 WL 6385815, at *2 (E.D.N.Y. Sept. 29, 2023).  The court

8

also must find a basis for the damages specified in the default judgment. *Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 1:22-cv-5942(NGG)(CLP), 2023 WL 5703698, at *3 (E.D.N.Y. Sept. 5, 2023).

When evaluating the defendant's liability, the court accepts as true all well-pleaded allegations in the complaint. *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019). Still, the court must ensure the allegations provide a basis for liability and relief, and the court has discretion to require further proof of necessary facts. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). If the unchallenged facts establish the defendant's liability, the court determines the amount of damages due. *Newman v. W. Bar & Lounge, Inc.*, No. 1:20-cv-1141(KAM)(RER), 2021 WL 2401176, at *3 (E.D.N.Y. June 11, 2021). The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment. *Id.*

## DISCUSSION

### I. Jurisdiction

The Court must assure itself of its jurisdiction. The Court may not enter a default judgment unless it has subject-matter jurisdiction over this action and personal jurisdiction over each defendant. *See Dumolo v. Dumolo*,

9

No. 1:17-cv-7294(KAM)(CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019).

A.    **Subject-Matter Jurisdiction**

Federal district courts have original subject-matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States."  28 U.S.C. § 1331.  The FLSA, a federal statute, creates the cause of action undergirding the first, second, and ninth counts in Plaintiffs' Complaint. (*See* Compl. ¶¶ 62-71, 99-104.)  Nothing in the record suggests that Plaintiffs' FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, or wholly insubstantial or frivolous.  *See A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022) (listing these as reasons why subject-matter jurisdiction may not exist even where the complaint contains claims technically arising under federal law).  This action thus arises under the laws of the United States, which gives the Court subject-matter jurisdiction over this action.  *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court has supplemental jurisdiction over Plaintiffs' NYLL claims.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Here, supplemental

10

jurisdiction clearly extends to Plaintiffs' third and fourth
claims, which seek to recover for unpaid minimum wages and
overtime premiums under the NYLL, because they virtually overlap
with Plaintiffs' first two claims, which seek to recover for the
same violations under the FLSA.  (*See* Compl. ¶¶ 62-81.)
Plaintiffs' fifth through eighth claims, which allege violations
of the NYLL's spread-of-hours pay, wage notice, wage statement,
and tip regulations under the NYLL, (*see id.* ¶¶ 82-98), lack
precise analogues in the FLSA.  Still, those claims form part of
the same case or controversy because "[r]esolving all of these
claims requires[s] considering evidence of the hours
[Plaintiffs] worked, the rate and method by which [they were]
paid, the amounts [they] were paid, and the parties' records (or
lack thereof) on these subjects."  *See Jenkins v. Yellowstone
Props., Inc.*, No. 1:17-cv-7764(VEC)(KHP), 2019 WL 4392955, at *2
(S.D.N.Y. Sept. 12, 2019).

     The Court ultimately lacks subject-matter jurisdiction
over, and dismisses without prejudice, Plaintiffs' wage notice
and wage statement claims under the NYLL,[5] (*see* Compl. ¶¶ 82-92),
however, because Plaintiffs lack standing to pursue those claims

---

[5] Though Plaintiffs include these NYLL claims in their Complaint, their motion
does not discuss them, nor does it appear to seek any relief based on them.
(*See* Mem. 17 (requesting damages in the amount of "unpaid minimum wages,
overtime wages, [and] unlawfully deducted wages")).)  Plaintiffs' supporting
affidavits, however, continue to discuss these claims.  (*See* Zabrodin Aff.
¶ 23; Gashimli Aff. ¶ 21.)  The Court thus addresses Plaintiffs' wage
statement and wage notice claims to avoid any doubt that it has resolved
Plaintiffs' entire motion.

in federal court. Article III of the federal Constitution restricts federal court power to hearing "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To have Article III standing, the plaintiff must have suffered an injury-in-fact likely caused by the defendant's allegedly unlawful conduct and redressable by a favorable court decision. *Id.* The injury must be "concrete and particularized," *id.*, which means some specific harm to the plaintiff beyond the defendant's technical violation of a statutory mandate, *id.* at 2213. Standing is not "dispensed in gross." *Id.* at 2208. Rather, the plaintiff must show standing separately for each claim he or she presses. *Id.*

Here, Plaintiffs did not allege facts linking any legally cognizable injury that they personally experienced to Defendants' failure to provide wage statements and wage notices under the NYLL. The Complaint merely alleges that Defendants failed to comply with these statutory mandates. (*See* Compl. ¶¶ 55–56, 86–92.) Plaintiffs' supporting affidavits elaborate that "Defendants' failure to provide accurate wage notices and accurate wage statements denied [them their] statutory right to receive true and accurate information about the nature of [their] employment and related compensation policies." (*See*

12

Zabrodin Aff. ¶ 23; Gashimli Aff. ¶ 21.)  Without some tangible downstream harm flowing from those statutory violations, however, Plaintiffs have not shown that they suffered a concrete injury resulting from Defendants' violations of the NYLL's wage statement and wage notice requirements.  Thus, they lack Article III standing to pursue those claims in this Court. Multiple courts in this district have reached similar results after the Supreme Court's decision in *TransUnion* clarified the rules regarding standing, beyond bare allegations of statutory violations.  *See, e.g.*, *Quieju v. La Jugeria Inc.*, No. 1:23-cv-264(BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023); *Guthrie v. Rainbow Fencing Inc.*, No. 1:21-cv-5929(KAM)(RML), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023); *Sevilla v. House of Salads One LLC*, No. 1:20-cv-6072(PKC)(CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).  Thus, because Plaintiffs lack standing, the Court lacks subject-matter jurisdiction over their wage notice and wage statement claims under the NYLL.

**B.   Personal Jurisdiction**

The Court finds that it has personal jurisdiction over each defendant.  Personal jurisdiction must comport with both state law and the Due Process Clause of the federal Constitution. *Relevant Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023).  New York law authorizes personal

13

jurisdiction over domestic corporations, N.Y. C.P.L.R. § 301,
and over non-domiciliary defendants who transact business within
the state, N.Y. C.P.L.R. § 302(a)(1).

The Due Process Clause is satisfied if the court has
general or specific personal jurisdiction over the defendant.
*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,
1024 (2021); *see* U.S. Const. amend. XIV, § 1.  A court has
"general" personal jurisdiction over an individual defendant
sued in his or her place of domicile and over a corporate
defendant sued in its state of incorporation or principal place
of business.  *Ford*, 141 S. Ct. at 1024.  A court has "specific"
personal jurisdiction over a defendant who purposefully avails
itself of the privilege of doing business in the forum state
where the plaintiff's claim arises out of the defendant's
contacts with the forum. *Id.* at 1024–25.

Silk 222 is a New York corporation with its principal place
of business in Brooklyn, New York.  (*See* Compl. ¶ 12.)  Thus,
the Court may exercise general personal jurisdiction over
Silk 222 in accordance with state law and the Due Process
Clause.  *See* N.Y. C.P.L.R. § 301; *Ford*, 141 S. Ct. at 1024.
Plaintiffs do not allege Kurbanov's citizenship; however, they
allege that he transacted business within New York as the owner
and manager of Silk Restaurant, which is the conduct that gave
rise to Plaintiffs' claims against him.  (*See* Compl. ¶¶ 18–22,

14

24, 48.)  Thus, the Court may exercise specific personal
jurisdiction over him.  *See* N.Y. C.P.L.R. § 302(a)(1); *Ford*,
141 S. Ct. at 1025.

## II.  Procedural Requirements

Before the court will enter a default judgment, the
plaintiff must show that entry of default was appropriate, which
itself requires a showing that the defendant was effectively
served with process.  *Sik Gaek, Inc. v. Yogi's II, Inc.*,
682 F. App'x 52, 54 (2d Cir. 2017) (summary order).  Local
Rule 55.2 imposes the additional requirements that the plaintiff
attach certain materials to the motion and file proof that all
motion papers were mailed to the defendant.

### A.   Service of Process

The Court finds that Plaintiffs properly served the Summons
and Complaint on each defendant.  Federal Rule of Civil
Procedure 4(e)(1) permits a party to effect service in
accordance with the rules of the state where the district is
located or where service is made.

As to Silk 222, state law permits a party to effect service
by delivering the summons and complaint to the New York
Secretary of State as an agent of the corporation.  N.Y.
Bus. Corp. Law § 306(b)(1).  Here, Plaintiffs served Silk 222
with notice of this action by their process server delivering
the Summons and Complaint to Nancy Doughtery, an agent in the

15

Office of the Secretary of State authorized to accept service for Silk 222.  (*See* ECF No. 9.)  Thus, Plaintiffs properly served Silk 222.

As to Kurbanov, state law permits a party to effect service by (1) delivering the summons within the state to a person of suitable age and discretion at the actual place of business of the person to be served and (2) mailing the summons by first class mail to the person to be served at his or her actual place of business, so long as the delivery and mailing occur within twenty days of each other.  N.Y. C.P.L.R. § 308(2).  Here, Plaintiffs served Kurbanov with notice of this action by their process server delivering the Summons and Complaint to Kurbanov's actual place of business at 222 Avenue U, Brooklyn, New York 11223, and leaving those documents with his colleague, Khadirov, a person of suitable age and discretion.  (*See* ECF No. 10.)  On the same day, Plaintiffs' process server mailed a copy of the Summons and Complaint by first class mail to the same address.  (*Id.*)  Thus, Plaintiffs properly served Kurbanov.

**B.   Entry of Default**

The Court next finds that the Clerk of Court properly entered a certificate of default against each defendant. Because Silk 222 was served on November 28, 2022, (*see* ECF No. 9), it was required to answer or otherwise respond to the Complaint by December 19, 2022.  *See* Fed. R. Civ. P.

16

12(a)(1)(A)(i).  When it failed to do so, Plaintiffs filed a request for a certificate of default and the other materials required by Local Rule 55.1.  (*See* ECF No. 12.)  The Clerk of Court entered Silk 222's default on March 14, 2023.  (ECF No. 14.)

Because Kurbanov was served on March 9, 2023, (*see* ECF No. 10), he was required to answer or otherwise respond to the Complaint by March 30, 2023.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  When he failed to do so, Plaintiffs filed a request for a certificate of default and the other materials required by Local Rule 55.1.  (*See* ECF No. 15.)  The Clerk of Court entered Kurbanov's default on April 5, 2023.

C.   **Local Rule 55.2**

Local Rule 55.2(b) requires that a plaintiff attach to a motion for default the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment.  Local Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant.

Plaintiffs' initial motion papers attached the certificates of default and complaint from the wrong case.  (*See* Mizrahi Decl. Exs. D–E.)  Additionally, Plaintiffs' initial service affidavit failed to specify that Plaintiffs mailed their motion

17

papers to Silk 222's "last known business address" and to Kurbanov's "last known residence," as Local Rule 55.2 requires, and instead merely stated that Plaintiffs mailed their motion papers "to the last known address" of each defendant, listed as 222 Avenue U, Brooklyn, New York for each defendant. (*See* Mizrahi Decl. Ex. G.)

Plaintiffs corrected these mistakes after the Court entered an order on October 23, 2023, calling attention to them. (*See* Am. Mizrahi Decl.) The corrected submission affirmed that Silk 222 was served at its "last known business address" and that Kurbanov was served at his "last known residential address," which was changed from the one listed in Plaintiffs' original submission. (*See* Am. Mizrahi Decl. Ex. G.) The submission was still deficient, however, because Plaintiffs' attorney declaration bore the wrong caption, referenced the wrong case, and attached billing records and invoices from the wrong case. (*See* Am. Mizrahi Decl. p. 1, ¶ 2, Exs. B–C.) Plaintiffs corrected these mistakes after the Court entered yet another order on November 6, 2023, calling attention to them. (*See* 2d Am. Mizrahi Decl.)

The mailing requirement is mandatory because "experience has shown that mailing notice of such an application is conducive to both fairness and efficiency." Committee Note, Local Civ. R. 55.2. Local Rule 55.2 is strictly construed, and

18

failure to comply with it is a basis to deny a motion for a
default judgment.  *Dixon v. Int'l Unified Workforce, Inc.*,
No. 1:18-cv-7191, 2020 WL 6140054, at *2 (E.D.N.Y. Sept. 1,
2020).  Still, the Court excuses strict compliance in this case
because Plaintiffs ultimately mailed Defendants motion papers
that complied with the rules, even if it took them three
attempts.  The third mailing, in which all documents are
properly captioned and from the correct case, provided fair
notice of the relief Plaintiffs seek to Defendants, who still
have not appeared or otherwise participated in this case.  *See
Guanglei Jiao v. Shang Shang Qian Inc.*, No. 1:18-cv-5624
(ARR)(VMS), 2020 WL 6370148, at *7 (E.D.N.Y. Aug. 11, 2020)
(explaining that courts may excuse minor noncompliance with
Local Rule 55.2 where the defendant still receives sufficient
notice and the noncompliance causes no prejudice), *R&R adopted
by* 2020 WL 5105063 (E.D.N.Y. Aug. 30, 2020).

**III. Liability**

Having assured itself that the jurisdictional and
procedural prerequisites to enter a default judgment are met,
the Court now must assess whether Plaintiffs' well-pleaded
factual allegations establish Defendants' liability as a matter
of law.  As a threshold matter, Plaintiffs must show an
employer-employee relationship between themselves and Defendants
to prevail on their FLSA and NYLL claims.  *Chang v. Loui*

19

*Amsterdam, Inc.*, No. 1:19-cv-3056(RER), 2022 WL 4586100, at *5 (E.D.N.Y. Sept. 29, 2022).  Because district courts in the Second Circuit interpret the NYLL's definition of "employer" coextensively with the definition the FLSA uses, *Jiang v. D&S Wedding Planner Inc.*, No. 1:22-cv-643(MKB)(CLP), 2023 WL 6307813, at *5 (E.D.N.Y. Sept. 28, 2023), the Court analyzes this threshold issue based on the FLSA's definitions.

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  The Second Circuit uses a four-factor test based on "economic reality" to determine whether an employer-employee relationship exists.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).  The test asks whether the defendant (1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedules or conditions of employment, (3) determined the employee's rate and method of payment, and (4) maintained employment records.  *Id.* at 104-05.  The court must consider the totality of the circumstances, and no single factor is dispositive.  *Id.* at 105.

Here, Plaintiffs have shown that they had an employer-employee relationship with Defendants.  Each plaintiff alleges that he was employed by Silk Restaurant.  (Compl. ¶¶ 6-7, 9-10.)

Plaintiffs allege that each defendant had the power to hire and fire employees at Silk Restaurant.  (*Id.* ¶¶ 17, 21, 31.) Plaintiffs further allege that Kurbanov, as Silk Restaurant's owner and manager, set Plaintiffs' work schedules and that each defendant controlled the conditions of Plaintiffs' employment. (*Id.* ¶¶ 16–17, 21, 26, 31, 49.)  Plaintiffs also allege that each defendant determined Plaintiffs' rate and method of payment.  (*Id.* ¶¶ 16–17, 21, 31.)  Finally, Plaintiffs allege that Kurbanov, as Silk Restaurant's owner and manager, maintained Silk Restaurant's employment records.  (*Id.* ¶¶ 21, 49.)  Thus, all four factors support a finding that as a matter of economic reality, each plaintiff had an employer-employee relationship with each defendant.  By the same token, the Court finds that Defendants are jointly and severally liable for the FLSA and NYLL violations discussed below.  *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685–66 (S.D.N.Y. 2011) (finding allegations that defendant was an "owner, partner, or manager" of plaintiff's corporate employer was enough to qualify him as an FLSA and NYLL employer and to impose joint and several liability with corporate defendant).

Plaintiffs have also shown that they are not exempt from the FLSA.  The FLSA does not extend minimum wage or overtime protections to an employee in a "bona fide executive, administrative, or professional capacity . . . or in the

21

capacity of outside salesman." 29 U.S.C. § 213(a)(1). How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 (2d Cir. 2020). Here, Plaintiffs allege that Zabrodin worked at Silk Restaurant as a "server and general worker," and Gashimli worked there as a "bartender and general worker." (Compl. ¶¶ 6, 9.) As a matter of law, such duties do not exempt employees from the FLSA's minimum wage or overtime protections. *See Brito v. Marina's Bakery Corp.*, No. 1:19-cv-828(KAM)(MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (collecting cases).

Finally, Plaintiffs have satisfied the FLSA's interstate commerce requirement. The FLSA requires that the plaintiff be either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a).[6] An employer is considered an "enterprise engaged in commerce" if it has an annual gross sales volume of at least $500,000 and employees who handle, sell, or otherwise work on goods or materials that have been moving in or produced for

---

[6] The NYLL lacks this requirement. *Gangadharan v. GNS Goods & Servs.*, No. 1:18-cv-7342(KAM)(MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

produced for commerce by any other person.  29 U.S.C.
§ 203(s)(1)(A).

Here, Plaintiffs allege the statutory requirements without
providing any specific examples.  (*See* Compl. ¶ 13.)  Still,
based on Plaintiffs' allegations that Silk Restaurant has an
annual gross sales volume of at least $500,000 and has employees
"engaged in commerce or in the production of goods and services
for commerce and handling, selling, or otherwise working on
goods or materials that have been moved in or produced for
commerce by any person," the Court can reasonably infer that at
least some of the equipment, goods, materials, and supplies used
by Silk Restaurant have moved or engaged in interstate or
international commerce.  *See Kilmchak v. Cardona, Inc.*,
No. 2:09-cv-4311(MKB)(ARL), 2014 WL 3778964, at *5 (E.D.N.Y.
July 31, 2014) (noting that several courts in this district have
inferred FLSA enterprise coverage based on the nature of the
defendant's business notwithstanding such pleading deficiencies
and collecting cases).

Finding these threshold requirements met, the Court
proceeds to consider whether Defendants' alleged conduct
violated the FLSA and NYLL.

**A.  Minimum Wage**

The FLSA and NYLL each require an employer to pay an
employee at least a minimum hourly rate for each hour the

employee works.  From June 2022 through October 2022, the
federal minimum wage was $7.25 per hour, 29 U.S.C.
§ 206(a)(1)(C), and the New York City minimum wage was $15 per
hour for both large and small employers, N.Y. Lab. Law
§ 652(1)(a).  Because Plaintiffs who bring claims under both the
FLSA and NYLL recover under the statute that provides the
greater measure of damages, the Court applies the higher NYLL
minimum wage. *See Fermin v. Las Delicias Peruanas Rest., Inc.*,
93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015).

The plaintiff has the burden to prove that he or she was
improperly compensated for the work he or she performed and the
defendant had actual or constructive knowledge of the work.
*Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).
If the defendant has defaulted, however, the court may presume
that the plaintiff's recollection and estimates of the hours he
or she worked are accurate.  *Cabrera v. Canela*, 412 F. Supp. 3d
167, 181 (E.D.N.Y. 2019).  An employer has a non-delegable duty
to maintain accurate records of its employees' hours.  *Kuebel*,
643 F.3d at 363.  Thus, it would be unfair to require more
substantial proof of improper compensation when the defendant is
not participating in the case and the plaintiff lacks the
ability to obtain the defendant's employment records through
discovery.  *See Cabrera*, 412 F. Supp. 3d at 181.  Moreover,
Plaintiffs here state that they were not required to keep track

24

of their time and that they are unaware of Defendants having used any time tracking device that would have reflected their actual hours worked, (*see* Zabrodin Aff. ¶ 14; Gashimli Aff. ¶ 12), so more precise evidence may not even exist.

Here, Defendants appear to have complied with the FLSA and NYLL minimum wage mandates when they paid Plaintiffs $15 per hour for all hours worked before July 16, 2022, and when they paid Plaintiffs $15 per hour for all hours worked on weekdays on and after July 16, 2022.  (*See* Compl. ¶¶ 35–36; Gashimli Aff. ¶¶ 8–9.)  Defendants fell out of compliance, however, when they paid Plaintiffs a flat daily rate of $50 *on weekends* after July 16, 2022.  (*See* Compl. ¶ 37; Gashimli Aff. ¶ 10.) Plaintiffs allege that Zabrodin worked twelve hours per day and that Gashimli worked ten hours per day on weekdays and twelve hours per day on weekends.  (Compl. ¶¶ 33–34, 41.)  Thus, for both Zabrodin and Gashimli, the $50 flat daily rate fell well below the federal and state minimum wage.

Further, Defendants were certainly out of compliance when they failed to pay Zabrodin *any* wages for his last three weeks of employment, (*See* Compl. ¶ 38), though the Court acknowledges that the Complaint is imprecisely drafted on this point.  On one hand, it states that "through and including October 2022," Defendants paid Zabrodin $15 per hour on weekdays and $50 per day on weekends.  (*See* Compl. ¶¶ 36–37; *see also* Mem. 2;

Zabrodin Aff. ¶¶ 10–11; 2d Am. Mizrahi Decl. Ex. A (Plaintiffs'
damages calculation, which appears to show that Zabrodin was
paid for time he worked during his last three weeks).)  On the
other, it states that Zabrodin's last day at Silk Restaurant was
October 31, 2022, and that he was not paid "*any wages*" for his
last three weeks of employment.  (Compl. ¶¶ 7, 38; *see also* Mem.
2; Zabrodin Aff. ¶¶ 8, 12.)  It cannot be true that Defendants
paid Zabrodin certain amounts "through and including October
2022" *and* that they did not pay him at all for the majority of
October 2022.

The Court gives Plaintiffs the benefit of the doubt and
infers that they intended paragraphs 36 and 37 of their
Complaint to describe conduct that occurred during the first
week of October 2022, not during the whole month.  A contrary
inference would assume that Plaintiffs included a blatantly
false allegation in paragraph 38 by stating that Zabrodin was
not paid during his last three weeks at Silk Restaurant.  There
is no evidence that was the case, and Plaintiffs' Complaint is
signed by their attorney, so the Court will not assume
Plaintiffs' counsel made false allegations.  *See* Fed. R. Civ. P.
11(b)(3).  Thus, the Court finds Defendants liable for violating
the FLSA's and NYLL's minimum wage provisions.

**B.    Overtime**

The FLSA and the NYLL's implementing regulations require an employer to pay an employee an overtime premium of one and one-half times the employee's regular rate for each hour the employee works above forty each week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  Like with the FLSA's and NYLL's minimum wage mandates, the Court may presume the accuracy of Plaintiffs' recollections and estimates of the hours they worked because Defendants have defaulted.  *See Cabrera*, 412 F. Supp. 3d at 182–83.

Here, Plaintiffs allege that Defendants paid them $15 per hour "for all hours worked" before July 16, 2022, $15 per hour for all hours worked on weekdays on and after July 16, 2022, and a $50 flat daily rate for two days per week (*i.e.*, weekends) worked on and after July 16, 2022.  (Compl. ¶¶ 35–37; Gashimli Aff. ¶¶ 8-10.)  Plaintiffs also allege that Defendants failed to pay Zabrodin any wages for his last three weeks of work. (Compl. ¶ 38.)  They explicitly assert that Defendants never paid them the required overtime premium of one and one-half times their regular rates.  (*Id.* ¶¶ 45, 69, 79.)  Thus, the Court finds Defendants liable for violating the FLSA's and NYLL's overtime provisions.

### C.   Spread-of-Hours Pay

The NYLL's implementing regulations require an employer to pay an employee a "spread-of-hours" premium of one additional hour's pay at the basic minimum hourly rate for each workday that lasts longer than ten hours.  12 N.Y. C.R.R. § 142-2.4. Here, Plaintiffs allege that they each worked more than ten hours per day for at least some days that they were employed at Silk Restaurant.  (Compl. ¶¶ 33-34, 41.)  They further allege that Defendants paid them $15 per hour, $50 per day, or nothing at all during this period.  (*Id.* ¶¶ 35-38; Gashimli Aff. ¶¶ 8-10.)  They explicitly assert that Defendants never paid them the required spread-of-hours premium.  (*Id.* ¶ 83.)  Thus, the Court finds Defendants liable for violating the NYLL's spread-of-hours provision.

### D.   Tip Retention

The NYLL generally prohibits an employer from demanding, accepting, or retaining any part of the gratuities received by an employee; however, this prohibition does not apply to the sharing of tips by a waiter with a busboy or similar employee. N.Y. Lab. Law § 196-d.  Here, Plaintiffs allege that Defendants "maintained a policy and practice of unlawfully appropriating" Plaintiffs' tips.  (Compl. ¶ 46.)  Specifically, Plaintiffs allege that Defendants required them to distribute their tips and that "[s]uch tips were required to be distributed to non-

28

tipped managers" at Silk Restaurant, including to Kurbanov.
(*Id.* ¶ 48.)  As Plaintiffs' employer and owner of Silk 222,
Kurbanov was not entitled to retain any portion of Plaintiffs'
tips.  *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d
234, 240–41 (2d Cir. 2011).  Thus, the Court finds Defendants
liable for violating the NYLL's tip misappropriation provision.

The Court also finds that Defendants may not benefit from
the FLSA's or NYLL's "tip credit" provisions. *See* 29 U.S.C.
§ 203(m); 12 N.Y. C.R.R. § 146-1.3.  Those provisions permit
employers to count tips that certain employees receive against
the full minimum wage that the employer would otherwise owe
them.  *Shahriar*, 659 F.3d at 239–240.   An employer may not
avail itself of either statute's tip credit, however, if it
requires tipped employees to share tips with employees who do
not customarily receive tips, such as managers.  *Id.* at 240–41
(explaining that 29 U.S.C. § 203(m) and 12 N.Y. C.R.R. § 196–d
"bar the same types of tipping practices").  Here, Defendants
are not entitled to a tip credit because they required
Plaintiffs to distribute tips to "non-tipped managers,"
including to Kurbanov.  (*See* Compl. ¶ 48.)

**E.   Kickbacks**

Plaintiffs' ninth claim contains just one well-pleaded
factual allegation:  that Defendants "made unlawful deductions
and required kickbacks from Plaintiffs' wages, including but not

limited to, deductions . . . for purported 30- or 45-minute breaks that Plaintiffs never received." (Compl. ¶ 100.) Plaintiffs do not elaborate on, or even mention, these deductions in their supporting memorandum or affidavits, nor do they appear to have included them in their damages computation. (*See* 2d Am. Mizrahi Decl. Ex. A.) Thus, the Court considers Plaintiffs to have abandoned their ninth claim in their Motion for Default Judgment and declines to find Defendants liable for that claim. *See, e.g.*, *W. Union Holdings, Inc. v. Haideri Paan & Cigarettes Corp.*, No. 1:18-cv-4281(NGG)(SJB), 2020 WL 1061653, at *3 n.2 (E.D.N.Y. Mar. 5, 2020).

## IV. Relief

Because Plaintiffs have established Defendants' liability as to Plaintiffs' minimum wage, overtime, spread-of-hours, and tip retention claims, the Court must determine whether Plaintiffs are entitled to the relief they request.

### A. Collective Action Certification

Plaintiffs' Complaint states that they seek to prosecute this action as a FLSA "collective action." (*See* Compl. ¶¶ 58–61, pp. 15–16.) The FLSA authorizes an employee to sue on behalf of him or herself and all other similarly situated employees. 29 U.S.C. § 216(b). To join in the action, other employees must "opt in" by written consent. *Id.* If the plaintiff makes a factual showing that he or she and the

30

potential opt-in plaintiffs were victims of a common unlawful policy or plan, the court conditionally certifies the action as a FLSA collective action by sending notice to potential plaintiffs who may be similarly situated. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). After those plaintiffs have opted in, the court determines whether they are in fact similarly situated to the named plaintiff. *Id.*

Because Plaintiffs did not reiterate their collective action certification request in their Motion for Default Judgment, the Court considers that request waived. *See, e.g.*, *Galicia v. 63-68 Diner Corp.*, No. 2:13-cv-3689(PKC)(RLM), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015). Additionally, where the plaintiff seeks to certify a FLSA collective action and the defendant defaults or in similar situations, other courts in this circuit have entered default judgments in favor of only the named plaintiffs and have left the defendants the opportunity to defend themselves against claims by future plaintiffs. *See, e.g.*, *Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 1:16-cv-4179(KAM)(CLP), 2017 WL 10845064, at *2 (E.D.N.Y. Sept. 30, 2017); *Galicia*, 2015 WL 1469279, at *1 (granting default judgment and deeming collective action certification request waived); *Charvac v. M&T Project Managers of N.Y., Inc.*, No. 1:12-cv-5637(CBA)(RER), 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013) (denying motion without prejudice

31

and granting leave to amend where plaintiff purported to add "opt-in" plaintiffs unnamed in the complaint).  The Court will proceed only with the named plaintiffs.  Thus, the Court's decision applies only to Zabrodin and Gashimli and not to any of Defendants' other employees.

**B.   Damages**

The measure of damages in a FLSA or NYLL case is the amount the plaintiff should have been paid minus the amount the plaintiff was actually paid.  *Ramos v. Guaba Deli Grocery Corp.*, No. 1:20-cv-4904(PAE)(JLC), 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 29, 2021).  The plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, though the plaintiff is entitled to relief under whichever statute provides the greater measure of damages.  *Ventura v. Putnam Gardens Parking Corp.*, No. 1:20-cv-119(JKG)(VF), 2023 WL 3603589, at *3 (S.D.N.Y. Mar. 20, 2023), *R&R adopted by* 2023 WL 3601649 (S.D.N.Y. May 23, 2023).

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law.  *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1).  The plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  Here, Plaintiffs

repeatedly allege that Defendants' misconduct was willful and that Plaintiffs did not act in good faith. (*See* Compl. ¶¶ 63–64, 70, 73–74, 80, 83–84, 97.)  Moreover, Defendants have not answered or otherwise appeared in this action, so they have forgone their opportunity to prove good faith. *See Chen v. Oceanica Chinese Rest.*, No. 1:13-cv-4623(NGG)(PK), 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023).  Thus, the Court finds Plaintiffs entitled to double damages for Defendants' violations of the FLSA and NYLL.

###     1.    Zabrodin

Under the FLSA and NYLL, Zabrodin should have been paid at least $15 per hour for the first 40 hours he worked each week and $22.50 per hour thereafter, plus another $15 per day as a spread-of-hours premium.  For thirteen weeks from July 1, 2022, through September 30, 2022, Zabrodin worked twelve hours per day and four days per week for a total of 48 hours per week.  Thus, for these thirteen weeks, Defendants should have paid Zabrodin a total of at least $10,920, which represents ($15 per hour x 40 hours of regular time per week x 13 weeks) + ($22.50 per hour x 8 hours of overtime per week x 13 weeks) + ($15 per day in spread-of-hours premium x 4 days per week x 13 weeks).  For the five weekends in October 2022, Zabrodin worked twelve hours per day and two days per week for a total of 24 hours per week. Thus, for these five weeks, Defendants should have paid Zabrodin

a total of at least $1,950, which represents ($15 per hour x 24 hours of regular time per week x 5 weeks) + ($15 per day in spread-of-hours premium x 2 days per week x 5 weeks).  Adding these figures together, Zabrodin should have been paid at least $12,870 during the relevant timeframe.

Defendants actually paid Zabrodin $15 per hour for each of the 108 hours he worked from July 1, 2022, through July 15, 2022, for a total of $1,620.  They paid him $15 per hour for each of the 252 weekday hours he worked from July 16, 2022, through October 31, 2022, for a total of $3,780.  They paid him $50 per day for each of the 26 weekend days he worked from July 16, 2022, through October 9, 2022, for a total of $1,300.  Finally, they paid him nothing for his last three weeks of employment, through October 31, 2022.  Adding these figures together, Defendants actually paid Zabrodin $6,700 during the relevant period.

Defendants are liable to Zabrodin in the amount of $6,170 (the difference between the $12,870 owed and $6,700 actually paid) for their minimum wage, overtime, and spread-of-hours pay violations.  Zabrodin further estimates, however, that Defendants unlawfully deducted $100 per day in tips from him for each of the 62 days in the relevant period for a total of $6,200.  (*See* Mem. 14; 2d Am. Mizrahi Decl. Ex. A.)  Thus, the

total compensatory damages Defendants owe Zabrodin are $12,370.
With liquidated damages, Zabrodin's total damages are $24,740.

### 2. Gashimli

Under the FLSA and NYLL, Gashimli should have been paid at
least $15 per hour for the first 40 hours he worked each week
and $22.50 per hour thereafter, plus another $15 per day as a
spread-of-hours premium.  For each of the thirteen weeks from
July 1, 2022, through September 30, 2022, Gashimli worked ten
hours per day for three days per week and twelve hours per day
for two days per week for a total of 54 hours per week.  Thus,
for the relevant period, Defendants should have paid Gashimli a
total of at least $12,285, which represents ($15 per hour x 40
hours of regular time per week x 13 weeks) + ($22.50 per hour x
14 hours of overtime per week x 13 weeks) + ($15 per day in
spread-of-hours premium x 2 days per week[7] x 13 weeks).

Defendants actually paid Gashimli $15 per hour for each of
the 118 hours he worked from July 1, 2022, through July 15,
2022, for a total of $1,770.  They paid him $15 per hour for

---

[7] The Court awards Gashimli a spread-of-hours premium for only two days per
week because his damages calculation shows that he worked exactly ten hours
per day for three days each week and exactly twelve hours per day for two
days each week.  (*See* 2d Am. Mizrahi Decl. Ex. A.)  Under the NYLL, an
employee is entitled to a spread-of-hours premium only for days the employee
worked *more than* ten hours and not for days the employee worked *exactly* ten
hours.  *See, e.g.*, *Calle v. Pizza Palace Café LLC*, No. 1:20-cv-4178(LDH)(LB),
2022 WL 609142, at *6 (E.D.N.Y. Jan. 4, 2022); *Ventura v. Herreros*, No. 1:18-
cv-6478(BMC), 2019 WL 343244, at *1 (E.D.N.Y. Jan. 28, 2019); *Bedasie v. Z.
Towing, Inc.*, No. 1:13-cv-5453(CLP), 2017 WL 1135727, at *39 n.56 (E.D.N.Y.
Mar. 24, 2017).

each of the 320 weekday hours he worked from July 16, 2022, through September 29, 2022, for a total of $4,800.  They paid him $50 per day for each of the 22 weekend days he worked from July 16, 2022, through September 29, 2022, for a total of $1,100.  Adding these figures together, Defendants actually paid Gashimli $7,670 during the relevant period.

Defendants are liable to Gashimli in the amount of $4,615 (the difference between the $12,285 owed and $7,670 actually paid) for their minimum wage, overtime, and spread-of-hours pay violations.  Gashimli further estimates, however, that Defendants unlawfully deducted $100 per day in tips from him for each of the 65 days in the relevant period for a total of $6,500.  (*See* Mem. 14; 2d Am. Mizrahi Decl. Ex. A.)  Thus, the total compensatory damages Defendants owe Gashimli are $11,115.  With liquidated damages, Defendants are liable to Gashimli in the amount of $22,230.

### C.  Pre-Judgment Interest

Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does.  *Fermin*, 93 F. Supp. 3d at 48.  To avoid giving the plaintiff a windfall, however, courts award pre-judgment interest only on the compensatory damages award and not on the liquidated damages award.  *Id.* at 49.  Courts calculate pre-judgment interest on a NYLL award at a rate of 9% per year.  N.Y. C.P.L.R. § 5004; *see*

36

*Vazquez v. 142 Knickerbocker Enter., Corp.*, 409 F. Supp. 3d 81, 90 (E.D.N.Y. 2018).  For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date.  N.Y. C.P.L.R. § 5001(b).  Courts have discretion to determine a reasonable date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date.  *Elghourab v. Vista JFK, LLC*, No. 1:17-cv-911(ARR)(ST), 2019 WL 2431905, at *12 (E.D.N.Y. June 11, 2019).

Here, for ease of calculation and transparency, the Court sets August 31, 2022, as the intermediate date for Zabrodin because that date marks the halfway point in his employment with Defendants during the relevant period.  Defendants owe Zabrodin daily interest in the amount of $3.05 (($12,370 x 0.09 annual rate) / 365 days), starting from August 31, 2022, running through today, November 20, 2023, for a total of $1,363.35.

Similarly, the Court sets August 15, 2022, as the intermediate date for Gashimli because that date marks the halfway point in his employment with Defendants during the relevant period.  Defendants owe Gashimli daily interest in the amount of $2.74 (($11,115 x 0.09 annual rate) / 365 days),

37

starting from August 15, 2022, running through today, November 20, 2023, for a total of $1,268.62.

### D.   Attorneys' Fees and Costs

The FLSA and NYLL each authorize an award of "reasonable" attorneys' fees.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). The standard method for determining reasonable attorneys' fees involves multiplying the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *Martinez v. City of New York*, 330 F.R.D. 60, 66 (E.D.N.Y. 2019). The fee applicant has the burden to prove the reasonableness and necessity of the hours spent and rates charged.  *Id.*  The applicant also must provide contemporaneous records indicating for each attorney the date, hours expended, and nature of the work done.  *Id.*  The court may look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York to determine the reasonableness of a fee request.  *Id.* at 69.

Here, Plaintiffs provided a spreadsheet showing the number of hours that each attorney and staff member expended litigating this case along with each person's hourly rate.  (*See* 2d Am. Mizrahi Decl. Ex. B.)  This spreadsheet shows that associate Jason Mizrahi completed 27.95 hours of work on this case and that paralegal Alexis Abrego completed 3.50 hours.  The Court omits the three one-hour entries for process servers and filing fees, which are listed under Abrego's name but appear to reflect

38

costs to the firm and not hours of work she billed at her hourly
rate.  Plaintiffs request hourly rates of $350 for Mizrahi and
$50 for Abrego.  (Mem. 16.)  Plaintiffs also request an hourly
rate of $450 for partner Joshua Levin-Epstein, (*id.*), but their
spreadsheet does not reflect that he did any work on this case,
(*see* 2d Am. Mizrahi Decl. Ex. B).  Consequently, fees will not
be awarded to Levin-Epstein.

The Court calculates Plaintiffs' total fee request is
$9,957.50, which represents ($350 hourly rate x 27.95 hours) +
($50 hourly rate x 3.50 hours).  Puzzlingly, Plaintiffs' motion
requests $9,957.50 "[a]pplying the percentage method," despite
having spent two pages discussing fees under the "lodestar"
method and attaching a spreadsheet to support the lodestar
calculation.  (Mem. 15–16.)  The percentage method is an
alternative to the lodestar method that calculates attorneys'
fees as a percentage of the plaintiff's recovery.  *McDaniel v.
County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010).
Plaintiffs do not state what percentage of the recovery they
seek in attorneys' fees and, because the amount they request is
identical to the lodestar method calculation, the Court assumes
that this statement was made in error and will instead apply the
lodestar method.

The Court finds the 31.45 hours for which Plaintiffs'
counsel seeks compensation are unreasonable, especially given

Plaintiffs' counsel's repeated errors.  The number itself is not necessarily excessive.  *See, e.g.*, *Villarrubia v. La Hoguera Paisa Rest. & Bakery Corp.*, No. 1:18-cv-4929, 2020 WL 6430327, at *3 (E.D.N.Y. Oct. 9, 2020) (awarding attorneys' fees for 33.68 hours of work in granting motion for default judgment in FLSA and NYLL case), *R&R adopted by* 2020 WL 6415171 (E.D.N.Y. Nov. 2, 2020).  Closely scrutinizing Plaintiffs' counsel's billing records, however, reveals inflated billing.

First, the Court is skeptical that drafting a damages computation, drafting an attorney declaration, and drafting client affidavits were all tasks that took Mizrahi *exactly* 3.00 hours, as his time entries claim.  (*See* 2d Am. Mizrahi Decl. Ex. B.)  The Court is also skeptical that it took Mizrahi 2.25 hours to draft a half-page letter to Magistrate Judge Henry requesting an extension to file Plaintiffs' Motion for Default Judgment.  (*See id.*)  The Court is further skeptical that client intake took precisely the same amount of time for Zabrodin and Gashimli.  (*See id.*)  Finally, the Court observes that Plaintiffs' counsel is litigating another FLSA and NYLL default judgment motion in this district, coincidentally before the undersigned judge, and that Plaintiffs' counsel twice mistakenly confused the two cases and attached their billing records from that other case to their motion papers in the instant case. (*See* Mizrahi Decl. Ex. B; Am. Mizrahi Decl. Ex. B.)  Given the

striking similarities between the papers Plaintiffs' counsel
filed in these two relatively straightforward cases, it was
unreasonable that Plaintiffs' counsel could not litigate this
case more efficiently.  Moreover, Plaintiffs' counsel made
numerous errors that caused the Court to issue orders directing
Plaintiffs' counsel to correct their filings.

The Court exercises its discretion to deduct a reasonable
percentage of the 31.45 hours for which Plaintiffs' counsel seek
compensation "as a practical means of trimming the fat" from
their fee request.  *See Gagasoules v. MBF Leasing LLC*,
296 F.R.D. 107, 111–12 (E.D.N.Y. 2013) (quoting *Kirsch v. Fleet
Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).  Thus, the
Court deducts ten percent of the hours Mizrahi billed and awards
fees for 25.16 hours of work by Mizrahi and 3.50 hours of work
by Abrego.

The Court also finds Mizrahi's requested hourly rate of
$350 excessive because it is at the high end of what courts in
this district generally award for work by senior associates in
FLSA and NYLL cases.  *See Jones v. Pawar Bros. Corp.*,
No. 1:17-cv-3018(PKC)(SJB), 2023 WL 6214213, at *7 (E.D.N.Y.
Sept. 25, 2023) (listing the range as $200 to $325).  Here, the
Court declines to award above-average fees for below-average
work.  Plaintiffs' counsel made numerous errors that needlessly
delayed and complicated the Court's resolution of an otherwise

41

routine default judgment motion. *See Gesualdi v. Stallone Testing Labs., Inc.*, No. 1:10-cv-646(ENV)(LB), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (explaining that filing, drafting, and calculation errors that waste judicial resources may warrant a fee reduction). These mistakes warrant an hourly rate of $200, the low end of what courts in this district typically award for work by senior associates. *See Jones*, 2023 WL 6214213, at *8.[8]

Plaintiffs' counsel's errors[9] included failing to serve Kurbanov until reminded by court order, *see supra* p. 6, filing their motion late without explanation, *see supra* p. 7, failing to alert the Court to a potential subject-matter jurisdiction defect, *see supra* p. 11, failing to comply with Local Rule 55.2, *see supra* p. 17, attaching a damages spreadsheet inconsistent with the Complaint's allegations, *see supra* p. 26, attaching the wrong billing records to the attorney declaration, (*see* Mizrahi Decl.), failing to correct that mistake in filing the first corrected declaration, (*see* Am. Mizrahi Decl.), and making an unsupported request for attorneys' fees based on the percentage

---

[8] The Court is aware that it recently reduced Plaintiffs' counsel's hourly rate only to $250 for similar reasons in a similar case. *See* Mem. & Order at 34, *Proano v. Melrose Home Improvement Corp.*, No. 1:22-cv-6050(KAM)(JAM) (E.D.N.Y. Nov. 17, 2023), ECF No. 24. Plaintiffs' counsel's errors caused more problems in the instant case, thus warranting a greater reduction.
[9] Though Plaintiffs' counsel's billing records indicate that Mizrahi was the only attorney who worked on the matter and he is the only attorney who has entered an appearance, Levin-Epstein is the senior attorney listed on the docket and his signature appears on the Complaint. (*See* Compl. p. 17.) Minimal oversight on his part may have avoided some of these errors.

method, *see supra* p. 39.  Such errors pose special problems in the default judgment context, where courts cannot rely on the adversarial process to reveal them.

Thus, the Court awards $5,207.00 in attorneys' fees, which represents Plaintiffs' calculation with a ten percent reduction from the number of hours Mizrahi billed and a $150 reduction from Mizrahi's requested hourly rate.

The Court awards $587.30 in costs, which include process server charges of $72.20 and $113.10 plus $402 in filing fees. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 198(4).  (*See* Mizrahi Decl. Ex. C.)

### E.   Post-Judgment Interest

Plaintiffs are entitled to post-judgment interest at the statutory rate as of right.  28 U.S.C. § 1961.  Thus, post-judgment interest shall accrue at the federal statutory rate until the judgment is paid in full.

### CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Default Judgment is granted in part and denied in part.

Plaintiff Zabrodin is entitled to the principal balance of $24,740 and pre-judgment interest in the amount of $1,363.35. Zabrodin shall be awarded post-judgment interest at the rate set forth in 28 U.S. § 1961(a), from the date judgment is entered until the date the judgment is paid in full.

Plaintiff Gashimli is entitled to the principal balance of $22,230 and pre-judgment interest in the amount of $1,268.62. Gashimli shall be awarded post-judgment interest at the rate set forth in 28 U.S. § 1961(a), from the date judgment is entered until the date the judgment is paid in full.

Plaintiffs are entitled to attorneys' fees in the amount of $5,207.00 and costs in the amount of $587.30.

The Court denies Plaintiffs' request to certify this action as a FLSA collective action.

The Court dismisses without prejudice Plaintiffs' NYLL claims for wage notice and wage statement violations.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order. Plaintiffs are ordered to serve a copy of this Memorandum and Order and the Judgment on all defendants and file declarations of service for each defendant within two days after the Clerk of Court enters the Judgment.

**SO ORDERED.**

Dated:      November 20, 2023
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York